Anthony J. Russo, Jr., Petitioner *v.* Commonwealth of Pennsylvania, State Horse Racing Commission and Penn National Racing Association, Respondents.

Argued June 5, 1981, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Richard J. Makoul,* for petitioner.

*Bart J. DeLuca, Jr.,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, and *Harvey Bartle, III,* Attorney General, for respondent, State Horse Racing Commission.

*Norman I. White,* with him *Terry R. Bossert, Mc-Nees, Wallace & Nurick,* for respondent, Penn National Racing Association.

OPINION BY JUDGE MACPHAIL, September 11, 1981:

Anthony J. Russo, Jr. (Russo) appeals here from an order of the Pennsylvania State Horse Racing Commission (Commission), dated August 11, 1980, that affirmed his ejectment from the Penn National Race Track (Race Track) by the Penn National Racing Association (Penn National). We affirm.

The instant case had its genesis in events that transpired on the evening of February 1, 1980, when Russo, a licensed jockey in the Commonwealth of Pennsylvania, caused a number of disturbances on the grounds of the Race Track. As a result of these disturbances, the Lakelands Racing Association (Lakelands) pursuant to Section 12.1 of the Act of Decem-

ber 11, 1967, P.L. 707, added by Act of July 24, 1970, P.L. 634, *as amended,* 15 P.S. §2662.1 (Act), ejected Russo from the Race Track. Russo appealed to the Commission. The first two of three hearings were held on February 11 and February 25, 1980. On February 27, 1980, Russo received a notice of ejectment from Mountainview Racing Association (Mountainview) based on the incident of February 1, 1980. Russo appealed. The third hearing, held February 28, 1980, consolidated the two appeals. In an adjudication dated March 20, 1980, the Commission held that both Lakelands and Mountainview had sufficient grounds for ejecting Russo from their respective meets. Russo requested reconsideration of two findings of fact. On June 13, 1980, Russo was served a notice of ejectment from Penn National based on the events of February 1, 1980. Russo appealed. A hearing was held on July 9, 1980, at which time both the reconsideration and appeal from the ejectment were considered. The records, of the previous proceedings relating to the incident of February 1, 1980, and the prior adjudication were entered into the record of the July hearing. In its adjudication, dated August 11, 1980, the Commission dismissed the reconsideration and upheld the ejectment of Russo by Penn National. It is the August 11, 1980, adjudication that is the basis for Russo's appeal to this Court.

The law is clear. This Court must affirm an adjudication of the Commission unless constitutional rights were violated, the adjudication was not in accordance with the law, procedural rules were violated or a necessary finding of fact was not supported by substantial evidence. *Daly v. Pennsylvania State Horse Racing Commission,* 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

Section 12.1 of the Act reads in pertinent part as follows:

(c) An association licensed by the commission may refuse admission to and eject from the enclosure of the race track operated by the association, any person licensed by the State Horse Racing Commission pursuant to section 11, employed at his occupation at such race track, *whose presence there is deemed detrimental to the best interests of horse racing,* citing the reason or reasons for such determination. The action of the association in refusing such person admission to or ejecting him from a race meeting ground or enclosure shall have immediate effect. Such person refused admission or ejected shall receive a hearing before the State Horse Racing Commission, if requested, pursuant to rules and regulations adopted for that purpose by the State Horse Racing Commission, and a decision rendered following such hearing. (Emphasis added.)

15 P.S. §2662.1.

Russo asserts there was not substantial evidence in the record to support his ejectment from the Race Track by Penn National. He argues that the Commission erred in considering evidence of his prior ejectments from the Race Track in determining whether the ejectment by Penn National should be sustained. We disagree.

At the July hearing, Penn National presented evidence (1) of a "Gentlemen's Agreement" executed after the March decision between Race Track and Russo that he would not reapply for permission to race at Race Track for one year; (2) that on June 11, 1980, Russo was permitted entry to Race Track as a patron; (3) that on June 12, 1980, Russo was permitted to conduct personal business on the back

side of the track; (4) that on June 13, 1980, Russo presented a petition to John Shumaker, President of Penn National Turf Club, requesting that Russo be permitted to return to Race Track; and (5) that upon denial of his request, Russo had jumped up from his chair, pointed a finger at, and threatened Shumaker. The only conflicting evidence presented by Russo focused on the exact words that he had used after he was refused readmission to Race Track.[1]

After considering all the evidence, the Commission in its second adjudication adopted all the findings of its earlier adjudication including, inter alia, that on February 1, 1980, Russo had become extremely unruly when he was informed he could not ride in the first race because of his late arrival at Race Track, that he engaged in loud, abusive and foul language in the presence of personnel of the track and the Board of Stewards, that he lied to the Board of Stewards, that he deliberately misrepresented the reasons for his late arrival, that he threatened the life of one of the members of the Board of Stewards,[2] and that he continually resisted physically and orally numerous requests by security personnel that he remove himself from Race Track.

Although it is clear from the discussion segment of its first adjudication that the Commission would

---

[1] Shumaker and a security guard who was present when Russo met with Shumaker claim Russo stated, "You just made a real enemy," and "You just wait and see, you'll find out because you just made an enemy of Tony Russo." Russo, on the other hand, asserts he said, "You're really trying to make a lot of enemies, my lawyer will be here tonight."

[2] In his request for reconsideration, Russo challenged only the findings of fact that he threatened the life of one of the members of the Board of Stewards and that the police were called for the purpose of arresting him because of his defiant trespass of the Race Track.

view with disfavor any further ejectments by other racing associations based on "the *same fact situation* as contained in the testimony before the Commission" (emphasis added), it is also clear that the instant ejectment is based on more than *just* that "same fact situation." Russo's actions on June 13, 1980, were also considered. These actions, however, were not the result of an isolated event, but arose as a result of the February incident and only served to exacerbate the situation. The Commission was justified, therefore, in re-examining the evidence relating to the February incident when it considered Penn National's ejectment. Our careful review of the record convinces us that there was substantial evidence to support the Commission's decision.

Russo further asserts that the penalty imposed by the Commission in the instant case is excessive and constitutes an abuse of discretion. We disagree. By its order, which dismissed Russo's appeal, the Commission has sustained Russo's ejectment by Penn National only.[3] We have held above that there was substantial evidence to support this ejectment. The fact that Russo's conduct on two occasions has resulted in three successive ejectments by three different racing associations is not the fault of the Commission, but rather it is that of Russo.

---

[3] Although the order did not specify a time limit for Russo's ejectments, the Commission in the discussion segment of its second adjudication stated that it believed this case should not be reviewed at the end of each racing meet at Race Track but ought to be scheduled for review on an annual basis. The Commission cautioned, however, that this conclusion was not to suggest that one year was an appropriate time for the ejectment of an individual such as Russo. Since these statements are merely dicta and Russo has not appealed from an order authorizing an extended ejectment, the issue is not ripe for decision at this time. Russo's contention that he is denied due process because he must appeal each and every ejectment is without merit.

Russo's assertion that his appeal was not fairly considered or reviewed by the Commission merely because he received an unsigned copy of the adjudication, issued on August 4, 1980, followed by an identical but signed copy of the adjudication,[4] issued August 11, 1980, is without merit. Actions of public officials are presumed to be regular until the contrary has been shown. *Board of Medical Education and Licensure v. Contakos,* 21 Pa. Commonwealth Ct. 422, 346 A.2d 850 (1975). Russo presented no evidence to support his assertion. Our review of the adjudication convinces us the Commission did seriously consider the record when it made its adjudication.

Order affirmed.

ORDER

AND Now, this 11th day of September, 1981, Order of the Pennsylvania State Horse Racing Commission at No. 80-049 dismissing the appeal of Anthony J. Russo, Jr. is hereby affirmed.

---

[4] In its brief the Commission stated that Russo inadvertently received an unsigned copy of the Adjudication because of clerical error.